### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRIGINIA
### NORFOLK DIVISION

FILED

AUG 1 9 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**Kingsley Azubuike Ononuju**

*(Plaintiff)*

v

**Virginia Housing**          Civil Case No. _2:24 cv 516_

*(Defendant)*

Jury trial

===================================================================

**COMPLAINT FOR 42 U.S.C §1983 and 42 U.S.C §1985(3)**

Before this honorable Court, is Title 42 U.S.C §§ 1983 and 1985(3) civil rights action,

in relation to implication and violation of Plaintiff's federal rights under Thirteenth and

Fourteenth Amendments to U.S Constitution.

**(1.)**

## STANDING

**1.** Plaintiff has standing to bring this civil action because he is the party whom personal properties were destroyed, and the Defendant ("VHDA") hereof is liable. Also, redressability is within the bounds of this Court.

## VENUE

**2.** The incidents giving rise to aforementioned federal violations happened in the City of Norfolk, Virginia, at which most witnesses or evidence of violations are located. Therefore, venue is proper in this Court and forum, pursuant to 28 U.S.C. §§ 1391(b) and 1395(a).

## JURISDICTION

**3.** This action arises under 42 U.S.C §§ 1983 and 1985(3), implicating the federal question jurisdiction. This Court therefore has "original jurisdiction and subject matter jurisdiction" to adjudicate this action pursuant to 28 U.S.C. §1331. Also, this Court has "in-rem, in-personam and long-arm jurisdictions", because the Defendant is a citizen or resident of Richmond, Virginia, and there is sufficient contact with Norfolk, pursuant to 28 U.S.C. §1391(d), as to rendering a binding judgment on the merits.

---

i. Court would recall that few weeks to rendering judgment on case number **2:20cv205**, Plaintiff moved for leave to add instant matter, but this Court denied motion, indicating that alleged facts thereof are insufficient, leading to finding ground futile and prejudicial to VHDA. Hereof, Plaintiff has augmented alleged facts pursuant to evidence, to correct the insufficiency.

**(2.)**

## PARTIES

**4. Plaintiff-**

Kingsley Azubuike Ononuju ("Plaintiff")— a tenant, U.S Citizen, former homeowner and resident of Norfolk with contact address at <u>2509 George Mason Drive, 6033, Virginia Beach, VA 23456</u>.

**5. Defendant-**

Virginia Housing ("Defendant" or "VHDA")— a landlord, former mortgage loan servicer and quasi-governmental Virginia state agency, with its principal place of business at <u>601 South Belvidere Street, Richmond, Virginia 23220</u>. It can be sued for injunctive and pecuniary liabilities arising from its misconducts, pursuant to Code § 36-55.30(1) and (29) of Virginia Housing Development Authority Act.

## RELEVANT FACTS

**6.** In January 2014, Plaintiff, 55, purchased his first-time home through obtainment of Federal Housing Administration ("FHA") loan assisted and backed by United States Department of Housing and Urban Development ("HUD"). At time of purchase, home had been in the market for long time, and the sellers were in urgent need of money to complete another building construction in which already had buyer waiting. This, in most part, encouraged the sellers to sell home below market value and at the price at which Plaintiff was approved.

**(3.)**

**7.** A brand new single-family (multifamily) home in which was worth more than $235,000, was thus sold to Plaintiff in the neighborhood of about $171,000. And about 3 weeks upon purchase, mortgage lender transferred or assigned loan to VHDA.

**8.** Few days later, Plaintiff, who is now disabled since 2019 (from his spinal injury occasioned by VHDA), moved into his new home with his household. Upon moving in, Plaintiff paved the right-wing side of his home, including fencing the entire home with quality white vinyl, and gated it. He spent a lot of money pressure-washing the siding every six months, and painted the interior and exterior parts every year. This helped in increasing the appearance and value of home. Plaintiff took good care of home from the very time he moved in.

**9.** Around November 2017, Plaintiff defaulted in his monthly mortgage payments. And around June 2018, VHDA, upon changing the mortgage trustee, arranged with the new substitute trustee to auction off Plaintiff's home. During the auction sale, no buyer showed up (due to poor advertising). After about six weeks, upon noticing that VHDA might have purchased the property, Plaintiff contacted VHDA to find out how much VHDA paid for the property if sold. VHDA told Plaintiff that VHDA literally did not purchase the property in the auction sale but gained control of the home, so as to convey the property to HUD. By conveying the home to HUD, VHDA would be paid for every term-of-loan profit by HUD

**(4.)**

**10.** Later, VHDA materially changed position and apprised Plaintiff that VHDA did purchase his home. Plaintiff asked VHDA 'how much did VHDA pay for his home?' and VHDA responded that VHDA paid whatever was the loan balance. Plaintiff asked, what was the exact amount VHDA paid? VHDA said it does not know. In other words, after passage of more than full six weeks, VHDA still did not know how much it bought Plaintiff's home.

**11.** VHDA was the buyer and the seller of aforesaid foreclosure, because the new trustee (who was the auctioneer that auctioned off home) made it clear to Plaintiff that they are VHDA's lawyer and representative. Eventually, after passage of more than 12 months, VHDA disclosed how much it paid for Plaintiff's home. It claimed it paid about $170,000 which covered the mortgage loan balance owed to VHDA, instead of paying close to $240,000, the fair wholesale market value of home at time of alleged sale.

**12.** VHDA inspected the property to assess the market value of property prior to foreclosure, and foreknew it was paying less than 30% wholesale market value of home during purchase. VHDA did not care about Plaintiff's 30% equity in his home, but only about the mortgage debt Plaintiff owed VHDA, as VHDA apprised Plaintiff, leading to why VHDA only paid the equivalent amount of the debt to cover the debt. On the other hand, the trustee ("seller's agent") claimed it never checked the market value of property before giving it to VHDA— the deal was all about VHDA.

**(5.)**

13. Following VHDA's claimed purchase of home, VHDA mailed a 5-day notice to Plaintiff, asking him to vacate property, as VHDA is now the new owner. And later, VHDA filed unlawful detainer action. Plaintiff, believing that some condition precedent to foreclosure were violated, brought a breach of contract lawsuit in state Court [seeking] rescission of the foreclosure sale. And about 10 or 12 months thereafter, VHDA apprised Plaintiff that VHDA would be charging Plaintiff "monthly rent" at market rental value of property and not at the amount of Plaintiff's monthly mortgage. VHDA said the rent applies to every month Plaintiff occupies home. Thus, the relationship between VHDA and Plaintiff were not limited to "mortgagee and mortgagor" but extended to "landlord and tenant" on month-to-month term, though no written lease was entered.

14. When Plaintiff did not send rental payment to VHDA, among other things, VHDA mailed Plaintiff another 5-day notice to vacate property, and apprised Plaintiff that if he did not vacate within this 5-day period, VHDA will institute another unlawful detainer action. When Plaintiff did not vacate property within the given 5 days, VHDA initiated another unlawful detainer action the following days, asking the state Court to grant possession of property to VHDA and to order Plaintiff to pay rents in which he failed to pay VHDA during post-foreclosure months Plaintiff occupied home.

15. Moreover, after Plaintiff was finally ousted from home, property was never occupied, was never re-sold, was never advertised for any re-sale, and was never taken

**(6.)**

care of, for more than 2 years. But on June 12, 2024, home with current market value of about $285,000, was readily re-sold to a private homebuyer in the amount of $255,000, after home was put in market for about just 3 weeks. That was about $85,000 increase from how much VHDA claimed it paid for home. Because home is now re-sold and the re-sale price is showing Plaintiff's $85,000 equity and VHDA`s mortgage loan balance, Plaintiff is hereof entitled to award of his equity, minus any property tax paid by VHDA at all times relevant. VHDA made it clear to Plaintiff that VHDA is never interested in buying the property but only in gaining control of the property for onward transfer to HUD and for ascertaining that the mortgage balance was covered.

16. But before joint bench trial of Plaintiff's rescission sought action and VHDA`s unlawful detainer action in the state Court, the HUD issued Mortgagee Letters ("HUD Moratorium") to which were thrice extended, to entities in selected fields, banning them from initiating or continuing with eviction of occupants in single-family homes insured and backed by HUD, all in an effort to slow down the deadly spread of the coronavirus infectious disease ('COVID-19') in which had taken so many American lives, especially the black minority race. VHDA was a mortgagee of home backed by HUD, thus VHDA got copy of this HUD Moratorium, and Plaintiff's home was among the homes covered.

---

ii. "In <u>Lindsey v. Normet, 405 U.S 56, 67 (1972),</u> the U.S Supreme Court clearly stresses that "<u>it is permissible to segregate an action for possession of property from other actions arising out of same factual situation that may assert valid legal or equitable defenses or counterclaims</u>".

**(7.)**

**17.** Upon getting HUD Moratorium, VHDA concealed it and never disclosed it to Plaintiff at all times relevant, unlike other lenders and landlords. However, state Court Court delayed the trial for long time, as Virginia state Courts were shut down or limited to only criminal trials due to rapid spread of COVID-19. Trial was finally held, and on March 23, 2021, the state Court entered and granted possession judgment and right to VHDA, and ordered Plaintiff to pay the monthly rents he owed VHDA at market rental rate, as VHDA requested. This ruling was rendered at the time during which the new Virginia laws (VA Code §§ 8.01-470; 8.01-471) mandated that possession judgment and issuance of writ of eviction, be limited to only 180-day life span from date of judgment. This new law required VHDA to give Plaintiff another 3 or 5-day written notice to vacate place, and if unvacated, to institute another unlawful detainer action—all applying in event the writ of eviction was not issued within 180 days from date of judgment. VHDA sent or emailed no notice to Plaintiff after VHDA`s 180 days had passed.

**18.** As to the monthly rents VHDA charged Plaintiff for all the post-foreclosure months Plaintiff occupied property, HUD was settling the mortgagees for all the HUD Moratorium months occupied by foreclosure mortgagors. VHDA has never showed any impression that it has excluded these months from the rents charged to Plaintiff.

---

iii. "The government [agency] as landlord, is still the government. It must not act arbitrarily, for like private landlords, it is subject to the requirement of due process of law. Arbitrary action is not due process" **Thorpe v. Housing Authority, 386 U.S 670, 678 (1967).**

**(8.)**

**19.** On November 10, 2021, after passage of VHDA's 180 days for which covered VHDA's possession judgment and issuance of writ of eviction, VHDA requested that writ of eviction be issued, but sent no copy of the request to Plaintiff, unlike how VHDA did in first writ of eviction in 2019, where copy was sent to Plaintiff on same.

**20.** On November 19, 2021, which was also after passage of VHDA's 180 days, the state Judge issued a writ of eviction to displace Plaintiff and his family, as requested by VHDA.

**21.** When Norfolk Sheriff department received the writ of eviction, it contacted VHDA to reach "mutual agreement" as to how and when to execute the writ. That was when and how the both parties began direct communication and collusion on same. Both parties agreed that the statutory minimum of 72-hour notice be given to Plaintiff, and agreed on when and how to execute the writ. However, because VHDA's 180-day time did not run at its designated time, the 72-hour notice (in which must be given to Plaintiff within a designated timeframe before he can be removed from his home), was not also given at its statutory designated time. Had VHDA not tolled the 180 days, this 72-hour notice would have been given to Plaintiff at the most in October 2021, but it was hereof given in December 2021— at a time Plaintiff was never expecting it because he did not

---

iv. VHDA did not use Mr. Godfrey Pinn to effectuate instant eviction and destruction and deprivation, but used another law firm. Maybe Mr. Pinn has noticed that the way the writ of eviction was requested and executed against Plaintiff, were so unfair. Mr. Pinn and his law firm have withdrawn from case too.

know and was never apprised about the HUD Moratorium, at all times relevant.

22. On December 6, 2021, the Norfolk Sheriff department posted a copy of the writ of eviction on Plaintiff's home entrance door, with a note highlighting that Plaintiff has only "72 hours" to move out. Because the writ of eviction was issued after VHDA`s 180 days, Plaintiff thought it was issued in error, and thus he immediately moved state Court to revoke the writ, but motion was denied within same 72 hours without a hearing. It was during this period and when it was remaining less than 10 hours given to Plaintiff to move out, that VHDA disclosed to Plaintiff that there was HUD Moratorium. It was during this time and when it was remaining less than 10 hours given to Plaintiff to move out, that VHDA also notified Plaintiff that HUD Moratorium had been lifted. It was during this period and when it was remaining less than 10 hours given to Plaintiff to move out, that Plaintiff learned that the VHDA`s 180 days were all tolled due to HUD Moratorium to which Plaintiff was just learning about.

23. Within same 10 hours remaining to move out, Plaintiff apprised the state Court and VHDA that he is learning about the HUD Moratorium for the first time, [and] thus asked for little more time to prepare, as he has no sufficient money due to COVID-19, nor a safe place to move into, [but] Plaintiff was ignored. Given that VHDA's 180-day

---

v. In "**Coulder v. Durham Housing Authority, 433 F.2d 998, 1001 (4th Cir. 1970)**", Fourth Circuit exposes that entities that are formed the way Durham Housing Authority was formed, are governmental actors for §1983 claim. This locks VHDA (aka Virginia Housing Development Authority) for §1983.

**(10.)**

time was tolled or did not run during the time it was designated to run, VHDA had about 4 months left to request for another writ of eviction from time Plaintiff learned about the HUD Moratorium, and thus VHDA would have requested that the writ be cancelled, to allow Plaintiff 2 to 4 weeks to look for money and a safe place.

24. Moreover, before aforementioned joint trial and when possession judgment was granted to VHDA, Plaintiff had been looking for any affordable safe place to move into, but had not found any. However, Plaintiff had been saving money for moving out, but the effects of the COVID-19 drained some of the savings. And when VHDA did not enforce its possession judgment within its 180 days, Plaintiff thought the reason was because VHDA was waiting for the federal Court to rule on case number 2:20cv205, to which Plaintiff was seeking rescission of the foreclosure sale. [Plain]tiff therefore used

---

vi. Even if VHDA was not required to notify Plaintiff about the HUD Moratorium, VHDA and the state Court, pursuant to due process of Fourteenth Amendment to U.S Constitution, were required to notify Plaintiff about the HUD Moratorium and about the tolling or time-change of the 180 days, especially during the request and issuance of the writ of eviction (as that was when the time-change of the 180 days were brought to the knowledge of the state Court). Such notification would ascertain that VHDA and Plaintiff have same understanding as to when the clock would start ticking for the 180 days—this is true, considering that failure to give such notification could impact preparedness of Plaintiff and ensue destruction of his personal properties in his home. Also, even if issuance of writ of eviction hereof was proper, there was a 30-day window to execute it pursuant to VA Code §8.01-471. In other words, there were about 14 days still remaining to execute it, calculating from the time the writ was issued. Thus, when Plaintiff apprised that he was learning about the HUD Moratorium and thus the tolling for the first time, and requested little more time to prepare, Norfolk Sheriff and VHDA would have withdrawn their 72-hour ultimatum, and would have given Plaintiff 7 to 10 more days to see if he can find a safe place to move into, before posting another 72-hour ultimatum. But here, they actually gave Plaintiff less than 10-hour notice (as opposed to the 72-hour mandatory minimum notice) from time Plaintiff learned about the tolling or time-change of the 180 days, and then they ousted Plaintiff and family from his only home, exposing him to deadly infection of COVID-19 in which were still on the spread then.

**(11.)**

the remaining savings to take care of his deteriorating health problem—with plan to save another money for relocation by the time VHDA serves him another "vacate notice" or obtains another possession judgment, pursuant to aforesaid new Virginia law.

25. Plaintiff also asked Norfolk Sheriff (within the 72-hour ultimatum) to please give him more time of about 2 to 4 weeks to look for money and a safe place to relocate, as he currently does not have any safe place to move to. Plaintiff said his mobility would also be impacted if he is removed from his home, because his car broke down and his access to many bus-stops near his home would give him mobility to look for money and a place. He said he has spinal injury and cannot walk long distance to bus-stop, and thus reason he needs a place close to bus-stops.

26. Further, Plaintiff said he is black race, and thus can contact COVID-19 easy if he moves to a public place. The Norfolk Sheriff said, "I'm sorry", we can't help you", and told Plaintiff to go to any nearby Shelter. Plaintiff responded that the Shelter is so congested and unsafe, as many black people with underlying health problem, like his, are contacting and dying from COVID-19 virus there. Plaintiff further said either way,

---

vii. "Due Process is flexible and calls for such procedural protection as the particular situation demands" **Mathews v. Eldridge, 424 U.S 319, 334 (1976).** Here, a reasonable jury could find that, because instant incident happened during COVID-19 deadly and highly contagious virus in which had taken so many American lives, it was uncommon situation. It could find that, pursuant to fundamental fairness of due process, instant situation demands flexibility and protection of affording Plaintiff more than 10 hours to safely move out from time he learned about the tolling or time-change of VHDA's 180 days, especially when there were still many days left to execute the writ issued by the state Judge. *Id.*

**(12.)**

he still needs little more days to make some arrangement and to find money to remove his belongings. [T]he Norfolk Sheriff, upon talking to VHDA, came back to the phone and told Plaintiff that the Norfolk Sheriff and VHDA are not backing down from ousting Plaintiff from property after his 72-hour time is passed. Plaintiff became so emotionally shattered and disoriented, leading to months of trauma, as he could not believe he would lose all his belongings therein upon which he labored to get since he was a minor.

27. On December 10, 2021, when Plaintiff returned home from fruitless search for a safe place to move into, he noticed that the Norfolk Sheriff and VHDA had changed entry door locks of his home and posted on the door thereof that Plaintiff is now ousted from the premises and can contact VHDA if he can remove his belongings therein within 24 hours. Plaintiff did not contact VHDA, as he knew it was practically impossible for him to find means to move out his personal properties and belongings within 24-hour ultimatum given to him.

28. After executing the writ and ousting Plaintiff and his family, Plaintiff did not have mobility to find a safe place to move to or a safe place with easy access to bus-stop, and thus, during the few days that ensued, Plaintiff contacted the state Court and VHDA again, imploring them to allow him back to his ousted home, at least for the moment, as

---

viii. "The due process clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of procedures used to implement them" **Zinermon v. Burch, 494 U.S 113, 125 (1990).**

he still has not found a safe place to move into, with COVID-19 deadly virus still on the spread, but Plaintiff was ignored. Still, all these times, the evicted home was never at all occupied by anybody or re-sold, and remained unoccupied and unsold for more than two years thereafter.

**29.** When the 24-hour time given to Plaintiff to remove his personal properties from evicted home, had passed, VHDA and the Norfolk Sheriff destroyed all Plaintiff's belongings therein, including his law school books, book printing machine and copies of his books and Christian books he sells, priceless video of funeral ceremony of his parent, and other precious belongings he labored to get since he was a minor.

**30.** At all times relevant, VHDA conspired or colluded with the state Court Judge in avoiding to notify Plaintiff about HUD Moratorium and about the different timeframe

---

ix. *See also,* "Conduct that shocks the conscience violates substantive guarantees of due process Clause independent of the absence or presence of post-deprivation remedies available through state tort law" **Dean v. McKinney, 976 F.3d 407, 421 (4ᵗʰ Cir. 2020) (*citing* Daniel v. Williams, 474 U.S 327, 338 (1986).** Here, a reasonable jury could conclude that the actions of VHDA and state Judge and/or state Sheriff are collusive and are so arbitrary, so egregious and so outrageous. In other words, a reasonable jury could find their actions "shock the conscience", as they are usually actions of someone who really wants someone to die, given that these actions happened at the time during which the COVID-19 deadly and highly contagious disease (in which had taken so many American lives, especially the black race) were still on the spread, and given that VHDA and the state Judge and Norfolk Sheriff all know that Plaintiff is black. It exceedingly shocks the conscience when they did not give Plaintiff little more days (from time he learned about the time-change of the 180 days) to enable him make arrangement to move out and move out his personal belongings—especially when VHDA still had more months to request for another writ of eviction (as opposed to starting another unlawful detainer action all over again), and when there were still many days remaining to execute the writ issued by the state Judge—also, when the evicted home was never sold (or even put in market for sale) and never occupied by anyone for more than 2 years thereafter. *Id.*

**(14.)**

with which VHDA`s 180 days would run, so as to timely make Plaintiff know when to likely expect the 72-hour statutory mandatory notice. It was abject failure to give such notification that ensued destruction and deprivation of Plaintiff's belongings hereof.

31. VHDA further conspired or colluded with Norfolk Sheriff in giving Plaintiff only less than 10-hour notice (from time Plaintiff learned about the HUD Moratorium and the time-change or tolling of the 180 days) to move out of his home—or conspired with same in failing to withdraw the 72-hour mandatory minimum notice and giving Plaintiff little more time to arrange moving out, as there were still about 2 more weeks to comply with the 72-hour notice.

32. By telling Plaintiff to go to Shelter where black people are readily contacting the COVID-19 deadly virus and dying, as opposed to giving Plaintiff few more days to find means and arrange means to move out, VHDA and Norfolk Sheriff did collusively endanger Plaintiff's life because he is black and did not care if he contacts coronavirus and dies. They also deprived or abridged Plaintiff's freedom of movement, as they knew that removing him from that home would impact his access to bus-stops near that home for his movement and mobility to look for means and place to move to. Nonetheless, by failing to allow Plaintiff return to or use the recently evicted property for some few days when he helplessly asked for it, as he (and his family) had still not found a safe place to move into, VHDA and state Court Judge did collusively endanger Plaintiff's life because

**(15.)**

he is black, given that the evicted property was totally vacant after Plaintiff was evicted and given that VHDA still had 4 more months left to request for another writ of eviction pursuant to the tolling of the 180 days. Had they given Plaintiff little more days, or had the aforesaid never happened, Plaintiff's emotional trauma (in which amply affected his concentration) would have alleviated, and Plaintiff would have safely made arrangement to remove his belongings—his belongings would not have destroyed and deprived from him hereof.

**33.** All these aforementioned violated Plaintiff's federal rights under Thirteenth Amendment to U.S constitution, including his searches and seizures and his due process rights under Fourteenth Amendment to U.S Constitution, implicating 42 U.S.C §§ 1983; 1985(3) causes of action hereof.

## **RELIEF SOUGHT**

**34.** For all the foregoing reasons, Plaintiff respectfully prays and implores this honorable Court to;

**A.** Grant him jury trial on all matters decidable by jury.

**B.** Grant him the **U.S $85,000** equity amount (minus applicable property taxes paid, if any), showing in the $255,000 in which instant property was sold for during month of June 2024—finding VHDA liable or any entity that authorized or received the $255,000.

**(16.)**

**C.** Grant him **U.S $329,000** compensatory/pecuniary damages for intentional infliction of emotional distress and for destruction and deprivation of his personal belongings in the evicted property—finding VHDA liable.

**D.** Grant him **U.S $11,500,000** punitive damages for intentional infliction of emotional distress and for destruction and deprivation of his personal belongings, all arising from international total disregard to Plaintiff's due process rights and egregious disregard to whether Plaintiff contacts the COVID-19 deadly virus and dies—finding VHDA liable.

**E.** And grant him any further reliefs, including court costs and fees, and applicable fair interest rates accruing from damages granted.

Respectfully Submitted, _____
Kingsley A. Ononuju
(Plaintiff appearing *pro se*)
2509 George Mason Drive, 6033,
Virginia Beach VA 23456
Telephone No.; 757 805 8850
Email; caringteam@aol.com

**Dated/submitted; August 19, 2024.**

**(17.)**



FILED

AUG 1 9 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRIGINIA

NORFOLK   DIVISION

**Kingsley Azubuike Ononuju**

*Plaintiff*


v.                                    Civil Action Number: ___J:24cu 516___


**Virginia Housing**

*Defendant*


Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief, that this complaint (1.) is not being presented for an improper purpose such as to harass, cost unnecessary delay or needlessly increase the cost of litigation, (2.) is supported by existing law, (3.) the factual contentions have evidential support, and (4.) the complaint otherwise complies with requirement of Rule 11.

Further, I agree to provide the Clerk`s Office with any changes to my address where case-related papers may be served. I understand my failure to keep a current address on file may result in the dismissal of my case.


Date of signing: _____Aug/19/2024_____

Signature of Plaintiff: _____

Name of Plaintiff:    Kingsley A. Ononuju



FILED

AUG 1 9 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRIGINIA

NORFOLK   DIVISION

**Kingsley Azubuike Ononuju**

*Plaintiff*

v.                                Civil Action Number: ___2:24cv516___

**Virginia Housing**

*Defendant*

**LOCAL RULE 83.1(M) CERTIFICATION**

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this

**COMPLAINT FOR 42 U.S.C §1983 and 42
U.S.C §1985(3)**

Name of Pro Se Party (Print or Type): <u>Kingsley Azubuike Ononuju</u>

_____

Signature of Pro Se Party

Executed on: ___Aug/19/2024___ (Date)